from the U.S. Patent Office, N. Ray Chapman, number 2009-1270, Mr. Reale, whenever you are ready. By the way, Ms. Reale, welcome back to the University of Houston Law Center. Thank you. It's changed, frankly, since I was last here. For the audience, Ms. Reale is a distinguished graduate of this fine institution. We won't tell a year. May it please the Court. My name is Doreen Trujillo, and I'm representing Chapman in this appeal from the rejection of Claims 1-10 and 12-15 of Chapman's application. N. Ray Chapman is a prime example of the distortion caused by hindsight bias that the Supreme Court cautioned against yet again in KSR versus Telflex. So you agree or disagree with KSR? KSR has changed the landscape for obviousness, I believe. But I think it left some things – it clarified and left some things in position, such as the import of making sure that you don't apply ex post-reasoning in a jury trial. It imported a new term, common sense and determination of obviousness? Well, I think prior Federal Circuit cases had addressed common sense. Maybe not as – it was in there in the teaching suggestion and motivation. They had considered that it wasn't just affirmed that you have to have an explicit teaching suggestion or motivation. You would have preferred to argue this appeal before KSR was decided? Well, it did come down in the middle of our prosecution. But I think we're still in good stead. Isn't the nub of this whether Gonzales either teaches or would lead one of skill in the art to put the linking polymer in the hinge region? Isn't the – I'm trying to get at the gist of what this appeal is all about. The gist of – Well, I don't think that's the only issue. I think the issue is whether Gonzales teaches putting the polymer and making a divalent antibody fragment, the dumbbell-shaped structure, which is what the board and the examiner relied upon. I think there's an issue whether – Isn't there a dumbbell structure in Gonzales? Gonzales talks about making a dumbbell-shaped structure, but that's four lines out of an 8,800 line specification. Just a dab will do. Pardon? Just a dab will do. I'm sorry. Well – But is the question really whether the board's reasoning was infected with error and we should send it back to them to have them reconsider the question of obviousness? Isn't that really the issue here rather than our finding non-obviousness based on the record, right? I think there are two issues. I think the hindsight that the board applied – and I disagree. I think that – No, but try to answer my question because this is important. Let's assume you're right, that there are three errors in the board decision. Yes. Okay? And, you know, I'm going to ask the government whether they agree with that, but they seem to agree with it. Let's assume that there are three errors in the board decision. Shouldn't that lead us to send it back to the board so that the board can reconsider the question of obviousness freed of that error? Definitely. I think those errors were harmful. Are you asking for more than that? Are you asking us to decide on – appeal the question of non-obviousness? If you were to decide that, we would – No, you wouldn't object. We wouldn't object. But that's not what you're asking for, right? We have – we would like reversal of the board's decision. We asked for that. It's something you can reverse and remain on, or you can reverse and say the answer here is that Chapman wins. We would prefer the latter, that we reverse and we win. Well, that's – I have a problem with that because I understand your argument that there were errors here, but it seems to me that they're errors of a factual nature, potentially, and that why shouldn't the board get a chance to reconsider the question free of that error? Why should we decide the issue of obviousness on this appeal? Well, that's a valid way to look at it. We think that there were factual errors, but we also think – Let me put it this way. Let's assume that the three points upon which you say there was factual error were not error, that it was correct. Then wouldn't we likely be affirming the board? You can be candid with me. We would still take the position that there was hindsight applied. Right. We might be inclined to reject that and say if these three data points, as Judge Digers referred to those factors, if we were to agree that the board had not made a mistake, then – and we were to reject your hindsight argument – we wouldn't need anything more. We would say, oh, the board had enough support for what it did. If we knock out the underpinning, if you will, of the three points, we don't know whether the board had some more ammunition that it could have used to explain why it thought the claims were nonetheless obvious, notwithstanding the fact that the three things it seemed to rely on dissipated. I think Judge Dike was trying to say, in the order of things, how can we know whether the board had, as I described, some more ammunition? The only way we can find out is to send it back. If we send it back and the board said, shoops, that's all we had, you win. Right. Right? Okay. But are you also saying that there's lack of substantial evidence to support the board's findings? Yes. On itself? I'm sorry? By itself? Even considering the three alleged errors which you claim they've made? Well, it's kind of difficult with the – our argument aside from those is that it's a clear instance where hindsight was used instead of looking forward from Gonzales. The board and the examiner before it looked backwards from Chapman's specification. The examiner admitted that at one point, stating, you know, that the – Gonzales teaches using the monovalent fragments, the FMV prime, to make the divalent fragment because the examiner said, well, that's what Chapman does. And the examiner – this is on A231 of the evidence. The examiner cited Chapman's own disclosure to show why one would want to prepare an antibody that fits Chapman's claim. So our position is that even notwithstanding, there wasn't a proper obviousness argument. There was no suggestion or motivation. Although Gonzales does talk about – But wasn't there at least six typical evidences that were shown, six possible fragments that Gonzales points out, which a person of skill in the art could have used? Right. And there are six different fragments, but one could imply – To make a conjugate, right? Including the Fab II?  If those are disclosed, what does it take beyond the person of ordinary skill in the art to carry those out? It's not just the fragments, Your Honor, and it's not whether they're the same fragments or different fragments. There's also the linkage, where you link the polymer to the antibody. The board is at page A11 of your record, page 10. There's no express teaching in how to make the structure. The knowledge of a person of ordinary skill coupled with Gonzales' teaching would have suggested the claim structure as a solution. Now, that's the board's rationale. But when you look at the board's – What's wrong with that rationale? Well, there simply is no disclosure that this dumbbell-shaped structure is desirable. There's no showing. It says you can make it, but it doesn't say it's necessary. It doesn't say it'll be better. It's just almost like a throwaway. Well, you told me a minute ago that Gonzales discloses a dumbbell structure. Yeah, didn't you tell me that? Yeah, right. Maybe I'm missing it. I don't understand why you're hanging on to the dumbbell structure as a distinguishing feature. Just hear what's happened is that the board is saying we conclude that one of ordinary skill coupled with Gonzales suggests the structure as a solution to the problem. Doesn't KSR tell us that that type of reasoning suffices? I don't believe so, Your Honor. KSR still held that there needs to be either a market pressure or a design need for making the change. And even though Gonzales, as we've admitted, states that you can make a dumbbell structure – When you say making the change, please help me a little bit. Precisely what is the change? You said there wouldn't have been any reason to make the change, then you're telling me – I'm sorry, Your Honor. Gonzales describes divalent antibody fragments that have polymers attached. Only they have the polymer attached at the lysine or they have a polymer attached between the heavy lysine. And so the attachment position is the distinguishing feature? Yes. That's what I said when we began the argument. It seemed to me that that's what the court was all about. And so why is it error when the board says Bonofskill, New York, would have figured out where to attach and it would have been the way in which your client attaches? Well, that's what the board said in their obviousness assessment. But if you turn to their assessment – That's what you got nicked for, isn't it? I'm sorry? That's what you got sent down for, was for obviousness. For obviousness. But one of our issues has been that the board seemed to analyze differently for anticipation. For anticipation, they state – That's the government's response to year three error point, I think, is that the board may have had its eye on the wrong ball, but when they finally got down to looking at KSR and how to apply it, they said there's only one missing element. That's the location of the polymer to link to the hinge. And so they say it would have been obvious. Right. And we still maintain that it would not have been because there is no – Well, is it non-obvious because it would have required a huge amount of experimentation, cost a lot of money, you know, that line of reasoning out of some of our cases that have found non-obviousness? No. Basically, as I said before, there's just simply no motivation to prepare this. Gonzales itself, as the director, admitted it solved the problem. If a lot of ordinary skill in the art was trying to solve the problem that your client was trying to solve and they got everything put together, include the dumbbell shape and whatnot, and they came down and said, oh, my goodness, I don't know where to attach, to have the polymer be linked, I don't know where to do it. But I know the problem I'm trying to solve, and I know that if I put the link here, I'm going to get X. If I put it there, I'm going to get Y in terms of performance. It seemed to me that what the board was trying to say is once you get down to that level of the nitty-gritty, it would have been obvious. Somebody wouldn't have had any trouble, since they knew what they were trying to do, to know which site to pick for the linking. Then we raise the teaching away argument, which is – Right, so my point to you, Counselor, is that if what's wrong, what's the fallacy of that reasoning? The reasoning that there aren't that many spots for making the connection. There are a lot of spots. Like how many? All different linkage groups, and the board and the director admits that you don't only have to link to a cysteine, and it doesn't only have to be a cysteine in the hinge region, and it doesn't only have to be a cysteine in the heavy chain. That's all true, but that's the point of Gonzales. He says that there's a preferred attachment point. For a monovalent. He talks about the monovalent for the FAB prime attaching at the hinge region. And even for that, Gonzales states, and it's on page six and seven of the director's brief, even there, Gonzales states, preferably not in a cysteine involved in bridge formation, and actually Gonzales engineers to add a cysteine in the hinge region in the working example that they talk about. So there seems to be a teaching away from having the hinge region cysteine that's involved in disulfide bridge formation. Well, that's not what was found by the Patent Office. There was a teaching away. They did not say there was a teaching away. I apologize, Your Honor. The Patent Office did not say there was teaching away. They said Gonzales was not teaching away from it. The Patent Office, we've argued that there was teaching away, and the Patent Office didn't agree with us. The examiner took us to a task for raising an argument that disagreed with his. And the board seemed to recognize that, as I said, on the anticipation side, but when it came to the obviousness side, they dismissed it, saying, okay, there's that specific discussion of not having it be in the bridge formation, but then they went on to say, but Gonzales also says you can attach it anywhere. So that was why we raised that was one of the other issues, that we think that there was a teaching away and that that's been disregarded. It seems to me you're asking for a lot. I mean, this is complicated chemistry. We're not experts. We're not skilled in the art. The PTO is. I don't see how we can possibly sit here and make the kind of factual determinations that you seem to be asking us to do when you suggest that we should reverse and hold that it's not obvious. Right. I appreciate that, Your Honor. The only question is, well, there's enough here on our standard review for us to affirm. That's, for purposes of your opinion, a $64,000 question. And we say there were factual errors and there's no substantial evidence to support it. Right, but the government is saying, because we're going to hear it in a minute, the government is saying, yeah, I mean, the error argument is a red herring because it's harmless. The government is saying the factual errors are harmless because at the end, the board understood that there was only one issue, one thing that was missing that wasn't explicitly stated in Gonzales, which is where do you make the location. And they say, well, let's go in there and figure that out. And if that's enough for the government is saying that's enough for 103 post-ASR. But then I think you're more on the In re O'Farrell where you're saying there's six different fragments which could be attached the same or different, and then there's eight different sites. Right, but I wasn't certain. I didn't see. I mean, you're going to make that argument to me now, you know, in the last 10 seconds of your argument. I didn't see that argument. No, I'm sorry, Your Honor. We argued that there would be 500 different attachment points and it would be a lot of different places to attach. So there would be a lot of decisions to be made. But, Chapman, but Gonzales does disclose those six. And selecting one of those six by a person of ordinary skill in New York would have made the conjugation, right? But it's not just the six fragments. It's also the attachment point, which there are eight different types of linkages. The attachment point was also designated by Gonzales as to where to essentially attach. For a monovalent fragment. Not for the monovalent, but not for the divalent. When they made their dive. But the question is whether or not the particular attachment point which makes it into a divalent is recognizable by a person of ordinary skill in New York as a PTO file. And we maintain that it wouldn't have been but for their factual errors. Thank you, Mr. O'Rourke. We'll restore two minutes of your rebuttal time. Good morning, Your Honors. May it please the Court. Are there three errors in the board's decision? Your Honor, the board does misstate and mischaracterize a couple things. But I'd like to go through them with you because they are harmless errors. Well, let's not get to the harmless. My first question is were there three errors in there? Can I go through them one by one? Sure. Just give me a conclusory answer to start with. Are there three, two, one? I think in the first instance they conflate two correct fact findings, and the way they conflate them is not correct. So that sentence is an error, but the two fact findings are not an error. I think in the second one, fact finding seven, that is an error the way they characterize it. And I think in the third one, fact finding three is actually correct as it's stated, but in other parts of Gonzales they talk about additional fragments. And I can march through them with you in more detail if that would help. Please. Okay. So the first one that Chapman complains about is on 8A of the board's decision. And it says that, let me just find what it says. Gonzales teaches a dumbbell-shaped antibody structure comprised of two monovalent fat prime fragments and describes linking them via a polymer molecule. Where are you on the page? I am on page 8. Page 8. A9. Is it denominated 8 or A9? Page 8 of the board's opinion. Yeah, I'm just looking for 8A. Weren't they fact finding numbers? Yeah, but it's not. Which number is it? It's actually 8A and it's the fourth sentence down. However, the examiner finds Gonzales teaches a dumbbell-shaped antibody structure. Just see that sentence. That's on 8A, right? On A8. And what they put in parentheses is fact finding 8 and fact finding 12. And so if you look at those two separate fact findings, what they did is they kind of put those two pieces together. Fact finding 8, which is the basis of the board's obvious conclusion, just says, and this is on A6, in another embodiment, Gonzales describes antibody conjugates. Let me see if I can shortcut this. As I understand what you're saying, the board's statement in that however sentence is incorrect because Gonzales does not show a dumbbell-shaped structure composed of two FAB fragments, right? Correct. So that's a mistake. Right. But the two underlying fact findings are correct. Well, okay, fine. But the board apparently misunderstood the fact findings and stated something that was incorrect in the opinion. Well, what the board says actually in its rehearing decision is that what it was doing was summarizing the facts. Now, let's not go to the rehearing. Right here, they made an incorrect assumption about what Gonzales shows. That's correct. And it seems to me it's hard to characterize that as harmless because what they're finding in Gonzales is something that's a lot more specific and a lot more like the claim and invention here than it would be if they had made a contrary finding. I disagree, Your Honor, because if you go on to A9 where they actually do their obviousness conclusion, they say there it's about ten lines down. However, Gonzales expressly describes another antibody structure in which a polymer molecule is used to link together two antibody fragments to form a dumbbell-shaped structure. Yeah, but they don't correct their error. They don't correct the error. They do not correct the error that they made on A8. They don't explicitly correct it, but in this sentence they're making clear that Gonzales isn't limited to particular fact fragments. May I ask a question? Is the board making a board fact finding on A8 when it says the examiner finds? Or is the board describing what the examiner has found and is arguing to the board? The board is describing what the examiner finds. So it is not a fact finding by the board on page A8? No, I think it's summarizing what the examiner found. When you get to A9 where the board says however Gonzales expressly describes another antibody, right? That's correct. There the board is making a fact finding. Right. I thought part of the point in your argument about the alleged error was that what the board was reciting, what the examiner was saying, the board wasn't necessarily adopting that. You can play it either way. But if Judge Dike is questioning you on the line that the statement on page A8 is a finding of fact by the board, which underpinned its 103 decision, and if that is a finding of the board, you have conceded it's error. I simply want to give you the chance to argue if you want that that is not a fact finding of the board. It's a description of a position taken by the examiner. It is a description of the position taken by the examiner. And I believe beginning on A9 is where the board sets out its analysis of the obvious. Is that statement on A9 correct? Gonzales expressly describes another antibody structure in which a polymer molecule is used to link together two antibody fragments to form a domino shape structure. That's correct. That's taken right out of the Gonzales pattern. Right. And has Gonzales established the fact that there is a formed dumbbell shape structure? It does disclose the dumbbell shape structure. Yes, it does. That's a finding by the board directly from the Gonzales pattern. That's correct, Your Honor. Why don't you go on to number two? I think we'll understand your position. Okay, so fact finding two, the incorrect statement there is the discussion where... Where do we see that in the opinion, please? Okay, I'm sorry. It's on A5, Your Honor. Fact finding seven. Fact finding seven. And what it says is Gonzales also describes conjugates in which the polymer is attached between the disulfide bridge that would ordinarily link the light and heavy chains. And actually what's happening there in Gonzales is the polymer is attached to either the light or the heavy chains. It's not linking the light and heavy chains. But again, that's not relevant here because Chapman's claimed invention is putting the polymer between the two heavy chains. I don't follow that because it seems to me the fact that you are using the polymer to connect the light and heavy chains might suggest that it was obvious or there's a motivation to combine the two heavy chains using the polymer linkage in the same place. In other words, it's possible to build on this in finding obviousness. Isn't that not true? No, I honestly think, Your Honor, that this is completely irrelevant. This is a completely different attachment and has nothing to do with attaching between the two heavy chains. Well, I understand that, but it is suggesting an attachment between the light and heavy chain at the point we're dealing with, right? I'm sorry? It does suggest an attachment of the light and heavy chains using a polymer at the particular point that's involved in this patent application. It's actually not the attachment between the light and the heavy chains. It's attachment to either the light or the heavy chains. That's the error in it. And so that's something different. Wait, wait, wait. I thought that you agreed that the board talked about attaching the light and heavy chains to each other. Right, and that's what Chapman alleges is incorrect, and it is incorrect. Right. But the problem is to the extent that the board relied on that, maybe they thought, well, if Gonzalo showed attaching the light and heavy chains this way using the polymer, maybe that supports attaching the two fragments that way. That's the theory. But why is that so bad? Well, I think, Your Honor, it actually works the other way, that the board found even in light of this finding where, according to this instance, you would not have the disulphide. How can we be sure that the board didn't rely on fact-finding seven? Because in its obvious analysis, it bases it on fact-finding eight, and it takes fact-finding eight, and then it says the only question, you have the dumbbell, the dumbbell's disclosed, and the only question is where you would attach. And it looks to Gonzalo, and Gonzalo says over and over you attach the hinge cysteine. So that's the basis for the board's obviousness decision, and it's not based on fact-finding seven. What about number three? I'm sorry? What about number three? Number three is a fact-finding. It's on 8-5, and it says that the antibody can be in at least three fragments. And should it list in what, five? Gonzalo's actually at column 11 in this place does list three, but elsewhere it talks about additional fragments. So there are potentially additional fragments. Is the correct number five? I don't know if the number is five, actually, Your Honor. I think the number is actually... But three's not the right number. There are more than three disclosed, correct? And can I also tell you that... There are more than three disclosed. There are more than three disclosed. I don't know if five is the right number. She said possibly six. So why isn't the larger number potentially significant in deciding whether it was obvious to do this? Because Chapman teaches over and over that you would connect through the hinge cysteine, that would actually limit the fragments you would use. Based on that, you would only use a Fab-Prime or a Fab-SH or a Fab-Prime-2, because those are the only ones that have a hinge cysteine. So whether there's additional ones or not, I don't think matters. Well, how do I know that? How do I know that? One of skill in the art would know. But I'm not skilled in the art. How do I know that? The Board doesn't say that, right? I mean, you say it. That's interesting. But the Board doesn't say it. But the Board says that Gonzales teaches that it's preferred to connect there, and it teaches the fragments where you can connect there. So one skill, reading it, would see if I want to connect through a hinge cysteine, there are only certain fragments I can use. Go back to finding three. You're saying that they disclosed three. That just includes one or more cysteine residues. That's on page A-5. Correct, Your Honor. So where do we get the five or the six or the three that you were referring to before? Elsewhere in Gonzales and other places, it talks about additional... On A-558 of Gonzales at line 21, for instance, at line 33 to 35, it talks about additional fragments. But they talk there about six, don't they? They're talking about six. That's what I had mentioned before. Now, Gonzales doesn't teach away, then, from linking the two heavy chains with a palmer? No, it doesn't, Your Honor. I mean, it teaches towards it. It just teaches it. It teaches it. And it discloses it and teaches it. It discloses it. It could be used that way. Yes, it discloses it and teaches it multiple times that that's the preferred way. On the two hinge regions for the residues. To connect through the cysteine. Right. Between the two heavy chains. So where is it teaching away, then? I don't quite understand that teaching away concept. Chapman argues that one of the teaching aways is that Gonzales does disclose that there are multiple linkage sites. And Gonzales does. And he talks about other theoretical sites. But he also says that it's preferred to link through the cysteine hinge. And that's really one of his preferred embodiments. That's correct, Your Honor. And it's the most complete working example in there. So, Your Honor, based on all that, I don't believe that there's any hindsight here. There's no dispute that Gonzales teaches every element of the claim. If one of skill in the art wants to make a dumbbell, they would only look to certain fragments that have the cysteine preferred hinge site. But is that your point about finding three? I'm still not sure that I completely understand that. Are you saying that finding three lists these three fragments because those are the only three fragments which have a hinged cysteine between the fab fragments? No. That's not what you're saying? No, the monovalent fab fragment actually doesn't have a hinged cysteine. I mean, what the board is doing here is they're taking one section of Gonzales that talks about three fragments. In other places in Gonzales, they talk about additional fragments. Okay. And so different ones can be used for the dumbbell, but like I was saying, one ordinary skill would go to the ones with the hinged cysteines. Yeah, but it seems to me you got the same problem that the appellant has. They want us to play chemist and reverse and say that it's not obvious. You want us to play chemist and say, oh, well, they made some mistakes, but somebody who's skilled in the art would understand that they were harmless. That's a problem, right? Well, actually, it's Chapman's burden to show that they were harmless, and they don't. They just have conclusory statements saying these are harmful. It's their burden to show. To show that they're harmful. I'm sorry, Your Honor. And they just have conclusory statements saying they are. If you look at the board's obviousness decision, it relied on fact-finding aid. It relied on the fact-finding bodies. That's not my understanding of harmless error.  Usually, the burden rests on the person who's saying the error is harmless to show that it's harmless. Your Honor, I think, and we cite these in our brief, and who knows, and Ingrid Watts, it says, to prevail, the appellant must not only show the existence of error, but also show that the error was, in fact, harmful because it affected the decision below. And I don't believe that Chapman has. He had, since then, a case called Sanders in the Supreme Court, to be sure, not dealing with this context, but dealing with the general concept of harmless error and saying that the burden is on the party alleging harmlessness to establish harmlessness. And, Your Honor, I believe we've done that as well by pointing out what the board actually based its obviousness conclusion on, and there's nothing in that that Chapman has pointed to as error. I think our adversary is saying that she can't determine whether or not the board relied on these factors, so she can't prove the negative. So the problem is that if there are, indeed, errors, we will never know whether those errors underpin the board's decision until we send it back and ask them to decide the case without the benefit. But I think we can determine whether or not the board relied on them, because we can read what the board actually did rely on in its opinion, beginning at A-9, and we can see that Chapman doesn't. Well, right, but the board simply gives us a bare conclusion on one of ordinary skill, and the RER with Gonzales would have no trouble at all here. But that all depends on what it is Gonzales teaches, right? And so to the extent that the board's opinion is saying we think Gonzales teaches A, B, and C, if we were to decide that the board made a mistake in thinking Gonzales taught A, B, and C, then that one of skill in the art that the board became, and it sort of jumped into the shoes of the ordinary skilled person, they're armed with the wrong equipment. I mean, the whole question is whether or not one of ordinary skill in the art takes Gonzales, puts it in, you know, lounges around the Gonzales, sops up Gonzales, and then looks at the problem to be solved and said, ha-ha, would I have found the answer? If you misunderstood Gonzales, then the predicate for the ordinary skill, I would have been able to find it, falls, right? Correct, Your Honor, but I still think if you look at what the board relied on, they would need to attack that and go through what the board actually based it on. The board is not clearly relying in its ultimate decision because it said the ultimate question is whether one of ordinary skill coupled with the Gonzales teachings would have suggested the structure. Now, if the person of ordinary skill in the art misunderstood Gonzales, then it couldn't have come to the correct conclusion, right? That's right, Your Honor. And I thought, maybe I missed it, but I thought that was basically the essence of the appellant's argument here, was that the board didn't grasp correctly all the things that were being taught by Gonzales. That is their argument. Can I just point you to one sentence on A-9 and I'll end it? I realize I'm over. What the board says is that the only issue that's recognized by the examiner is whether persons of skill in the art would have had reason to join the fragments together using a polymer link to the hinge system, and Gonzales teaches that over and over. What are you reading from? That's on page A-9. A-9, Your Honor. The reason why the board and the examiner reached that conclusion is because they had read Gonzales to teach a bunch of things that take off of the table everything other than the hinge location, right? No, I disagree with that, Your Honor. I understand you disagree with it, but I don't see why it isn't reasonable to read and you say, well, the only issue left in the case is X. That's because the examiner and the board have decided that other issues have already been decided against the applicant because of what Gonzales teaches. But, Your Honor, that one teaching, which I think is the one that is troubling the court so much about the light and heavy chain, that's not a dumbbell. And so that's an irrelevant finding. Thank you, Ms. Lynch. Thank you. Ms. Carrillo, you have three minutes. I'd like to clarify something. I might have misheard it. Gonzales does not teach two antibody fragments connected by the hinge region system, have the polymer connected to the hinge region system. It suggests a dumbbell, teaches a dumbbell-shaped structure, but doesn't tell how that structure could be prepared. But it doesn't teach away from it. We think it teaches away because, although the director... No, what I'm saying, Gonzales does not teach away from it, does it? We believe it does. In what respect? Because Gonzales goes out of its way to teach away from having the polymer be a bridge between two cysteines, whether it be between the heavy and the light chain or even between the heavy chains. Because even with the monovalent fragment, which teaches applying to the hinge region, they talk about not using a cysteine involved in a bridge and actually engineer in an additional cysteine. So we do not think Gonzales teaches that and actually teaches away. But doesn't Gonzales really encourage that linking concept? In the polymer, the hinge region, cysteine residues? No, we don't believe so because it only talks... That's one of his preferred embodiments. For the monovalent. And so they're making a leap in logic that you would want to prefer. But going from the monovalent to the divalent, then does it really take a person of ordinary skill in the art to read Gonzales and figure that out? Since it does not teach away from it? I think you have to consider what Gonzales is also saying about not having it be the bridge. So I think it does. I also wanted to clarify that the director keeps arguing that the board made their decision on fact-finding 8. And even on A9, fact-finding 7, which they concede was erroneous, is listed on page A9. So I'm not quite understanding how they can say this wasn't part of the decision. And I disagree that the fact-finding on page A8... We feel that that's a finding by the board, even though the board states, however the examiner finds Gonzales teaches a dumbbell-shaped antibody structure comprised of two monovalent fab-prime fragments, that's a finding by the board that affected the board's decision. Any questions? Thank you, Your Honor. Thank you very much. Thank you for your arguments. Case is submitted. All rise. The Honorable Court has adjourned. Please remain standing until the Honorable Court has exited the auditorium. Thank you.